# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| GRAY, INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| v. ) | |
| ) | |
| CATLIN SPECIALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| ) | |

## COMPLAINT

Plaintiff, Gray, Inc. ("Gray") files suit against Catlin Specialty Insurance Company ("Catlin"), and alleges as follows:

### NATURE OF ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201 and for money damages.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this district because a substantial part of the events giving rise to the claim occurred in this district. 28 U.S.C. § 1391(a)(2). Specifically, the policy was issued and delivered to Gray in this district.

4. All conditions precedent have occurred, have been performed, or have been

waived.

## THE PARTIES

5. Gray is a Kentucky corporation with its principal place of business in Lexington, Kentucky.

6. Catlin is a Delaware corporation with its principal place of business in Atlanta, Georgia.

## GENERAL ALLEGATIONS

## THE UNDERLYING LITIGATION

7. Gray is an engineering, architecture and construction firm that designs and builds facilities all over the United States.

8. Adena Meat Products, L.P. ("Adena") is a meat processing business with operations in Florida.

9. Adena contracted with Gray for it to serve as the general contractor to construct a meat processing facility (the "Project") in Ft. McCoy, Florida.

10. Gray, in turn, hired Murphy Mechanical Inc. ("Murphy") as a subcontractor.

11. Adena claimed that Gray was responsible for damage to water piping and equipment installed as part of construction of Adena's meat processing facility.

12. Murphy conducted hydrotests on the piping, as part of the chemical treatment program.

13. The hydrotests were conducted by using water that was <u>not</u> treated to kill all microbes in the water.

14. The untreated water which contained a corrosive-causing agent, bacteria, was left in the piping for months to weeks.

15. These conditions caused microbiologically influenced corrosion ("MIC") to occur.

16. The acids from the MIC-related microbes and communities accumulated.

17. The MIC-related microbes and communities established deposits on the piping under which several forms of corrosion and pitting occurred.

18. By January 2014, this corrosion caused the pipes to leak.

19. Over the following months Gray corresponded with its subcontractor, Murphy, in an attempt to identify and resolve the issues surrounding the leaking pipes.

20. For a period of five (5) months, Gray made repeated requests for Murphy to correct identified defective work.

21. On February 6, 2015, Gray made its final attempt to get a response from Murphy and sent a letter advising it that Gray was left with no alternative but to correct the defective work, and then recover its costs from Murphy pursuant to the terms of its subcontract.

22. Gray timely tendered the matter to Catlin on February 19, 2015.

23. Based on the foregoing, Adena withheld payment due to Gray.

24. In response to Adena's withholding of payment, Gray filed a Demand for Arbitration and Notice of Demand against Adena on June 15, 2015, in conjunction with a contractor's lien for payment for work performed in constructing the processing facility (the "Underlying Action").

25. On July 31, 2015, Adena filed a counterclaim against Gray.

26. In its counterclaim, Adena identified that stainless steel piping at the Project was in need of replacement because it had been compromised by MIC, as a result of Gray and its subcontractors' failure to ensure proper testing and a failure to utilize piping appropriate for such site water.

27. On July 22, Gray communicated to Catlin that Gray and Adena had commenced arbitration.

28. Gray requested that Catlin participate in the arbitration, but Catlin never responded.

29. On September 16, 2016, Gray and Adena reached a settlement agreement on the issue of the corroding pipe issue.

30. Gray and Adena settled for $1,560,000 for the alleged defects in the pipe due to bacteria causing MIC.

## THE POLICY

31. Catlin issued a Contractor's Protective Professional and Pollution Liability Insurance Policy, bearing Policy No. CPL-197795-1013 for the period October 20, 2012 to October 20, 2013 (the "Policy").

32. The Policy provides occurrence-based, professional and pollution liability coverage for liability Gray incurs with a $10,000,000 limit for each claim and in the aggregate, with a self-insured retention of $250,000 for each contractor's pollution liability claim under Coverage C.

33. Gray is entitled to coverage under Coverage C of the Policy for actions Adena alleged in the underlying action ("Underlying Action").

34. Catlin is obligated to provide coverage of costs arising out of the Underlying Action under Coverage C, as such costs are: "Contractor's Pollution Liability" claims that "[t]he Insurer will pay on behalf of the Insured for all Pollution Loss or Claim Expense in excess of any applicable Self-Insured Retention that the Insured is legally obligated to pay as a result of a Claim for Bodily Injury, Natural Resource Damage or Property Damage caused by Pollution Conditions arising out of Contractor Activities…"

35. The Policy defines "Pollution Condition" to mean actual or alleged discharge, dispersal, release, seepage, migration, growth or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, bacteria, legionella pneumophilia, asbestos, lead, silica, liquids, gases, contaminants, organic or inorganic pollutants, electromagnetic fields, hazardous substance.

36. The Policy provides that Property Damage means physical injury to or destruction of tangible property, including resulting loss of use thereof.

37. Claims Expense is defined to mean all reasonable and necessary fees, costs, and

expenses incurred in the investigation, adjustment, defense and appeal of a Claim, if incurred by the Insurer, by counsel retained by the Insurer, or by the insured with the Insurer's prior written consent.

38. Further, Coverage C provides coverage to an insured for Pollution Conditions, provided that the Property Damage occurs during the policy period and the claim arises out of ongoing or completed Contractor activities performed by the Insured.

39. Coverage C provides:

"Progressive, continuous, intermittent or indivisible Bodily Injury, Natural Resource Damage or Property Damage that occurs over a period of days, weeks, months or longer caused by a Pollution Condition shall be deemed to have occurred only on the date of first exposure to such Pollution Condition. The date of first exposure is:

(b) For Natural Resource Damage or Property Damage, the date of the first Pollution Condition that results in Natural Resources Damage or Property Damage."

40. The damages arise from a pollution condition that occurred at the Project site during the policy period, during ongoing contractor activities performed by or through Gray.

41. The claims made against Gray in the Underlying Action constitute "Property Damage" under the Policy.

42. There are no applicable exclusions to Coverage C.

## COUNT ONE
## BREACH OF CONTRACT

43. Gray repeats and re-alleges the above allegations in paragraphs 1 through 42 with the same force and effect as if repeated in their entirety.

44. The Policy that Catlin issued to Gray constitutes an enforceable contract.

45. Gray has complied with all of the Policy's provisions to the extent required by law and made all premium payments to Catlin.

46. Gray is entitled to defense and indemnity coverage under the insurance Policy issued by Catlin for all the acts alleged in the Underlying Action.

47. Catlin has denied coverage in breach of its contract with Gray.

48. Catlin has failed to respond to requests from Gray for it to reconsider its coverage position, in breach of its contract with Gray.

49. The Policy required Catlin to provide a defense in the Adena matter after Gray exhausted its $250,000 retention.

50. Although Gray has exhausted its $250,000 retention, Catlin refused to provide Gray a defense in the Adena matter.

51. Because of Catlin's breaches of the Policy, Gray has been damaged, or will be damaged, in an amount to be proven at trial.

## COUNT TWO
## COMMON LAW BAD FAITH

52. Gray repeats and re-alleges the above allegations in paragraphs 1 through 51 with the same force and effect as if repeated in their entirety.

53. In addition to its explicit terms, the Policy implies a duty for Catlin to deal fairly and in good faith with Gray.

54. Catlin violated its express and/or implied duties under the Policy by, among other things, interpreting Policy language and omissions in Policy language against Gray and contrary to the interests of its policyholder.

55. Catlin's conduct was unreasonable, and Catlin knew or should have known that its conduct was unreasonable or it has deliberately disregarded the fact that its conduct was unreasonable.

56. Gray expected the benefit of a defense under the Policy it purchased from Catlin.

57. Despite Gray's need for the defense it had purchased for a claim alleging millions of dollars of damages, Catlin denied a defense and then ignored Gray's response to the denial for over two months.

58. Catlin did not have a reasonable basis for denying coverage under the Policy.

59. Catlin did not have a valid basis for refusing to provide Gray with a defense under the Policy.

60. Gray responded to Catlin's denial on July 19, 2016 and received no written or substantive response from Catlin.

61. Gray communicated with Catlin regarding the Adena arbitration on July 22, 2016 and received no written or substantive response.

62. Catlin forced Gray to commence this litigation to recover benefits to which it is entitled under the Policy.

63. Catlin's bad faith has caused Gray to be damaged in an amount to be proven at trial.

## COUNT THREE
## VIOLATION OF UNFAIR CLAIMS SETTLEMENT PRACTICES ACT

64. Gray repeats and re-alleges the above allegations in paragraphs 1 through 63 with the same force and effect as if repeated in their entirety.

65. Catlin is an insurance company engaged in the business of insurance in the Commonwealth of Kentucky.

66. By virtue of the wrongs complained of herein, Catlin has violated and failed to comply with the requirements of the Kentucky Unfair Claims and Settlement Practices Act ("KUCSPA"), K.R.S. § 304.12-230.

67. Catlin's violation of the KUCSPA includes, but is not limited to, Catlin's failure to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy, in violation of K.R.S. § 304.12-230(2).

68. Catlin's violation of the KUCSPA includes, but is not limited to, Catlin's refusal to pay the claim associated with the Underlying Action in conjunction with its refusal to conduct a reasonable investigation based upon all available information, in violation of K.R.S. § 304.12-230(4).

69. As a direct and proximate result of Catlin's violation of the KUCSPA, Gray has suffered damages in an amount to be determined at trial.

## COUNT FOUR
## DECLARATORY RELIEF

70. Gray repeats and re-alleges the above allegations in paragraphs 1 through 69 with the same force and effect as if repeated in their entirety.

71. This claim is proper as a declaratory action pursuant to 28 U.S.C. § 2201.

72. The Underlying Action triggered Catlin's obligation to provide Gray defense and indemnity coverage.

73. Gray is entitled to coverage under the Policy issued to Gray by Catlin.

74. This controversy between Gray and Catlin relates to the Policy and is present, justiciable, and sufficiently invokes this Court's powers to declare the parties' rights and liabilities.

## REQUESTED RELIEF

WHEREFORE, Gray respectfully requests judgment against Catlin as follows:

A. Judgment against Catlin awarding Gray all actual, consequential, statutory, and incidental damages, in an amount to be proven at trial;

B. A judicial finding and declaration that Catlin's failure to provide coverage for a claim that is provided for under a policy is breach of contract;

C. A judicial finding and declaration that Catlin has a duty to defend and indemnify Gray;

D. A judicial finding and declaration that Catlin acted in bad faith in its failure to provide Gray with a defense in the Underlying Action;

E. A judicial finding and declaration that Catlin violated the Kentucky Unfair Claims Settlement Practices Act;

F. An award of attorneys' fees and costs incurred by Gray in defending the underlying action, bringing this action, pre-judgment and post-judgment interest on the foregoing

sums at the maximum rate recoverable by law; and

    G.    Such other relief deemed appropriate by the Court.

## JURY DEMAND

Gray hereby demands a jury trial on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

    Respectfully submitted,

/s/ *William L. Yocum*
William L. Yocum (KY Bar # 95219)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Phone (816) 753-1000
Fax (816) 753-1536
wyocum@polsinelli.com

*Counsel for Gray*